1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL B. LEWIS, | Case No. 1:21-cv-01243-ADA-SAB |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING DENYING PLAINTIFF'S SOCIAL SECURITY APPEAL |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | (ECF Nos. 14, 20, 21) |
| Defendant. | **FOURTEEN DAY DEADLINE** |

## I.

## INTRODUCTION

Plaintiff Michael B. Lewis ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for Social Security benefits pursuant to Title II of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted without oral argument. For the reasons set forth below, the Court issues the following findings and recommendations to deny Plaintiff's appeal.

///

///

1

1

**II.**

2

**BACKGROUND**[1]

3          Plaintiff filed the instant application for Social Security benefits under Title II on December

4    6, 2017, alleging disability beginning January 18, 2019.[2]   (See Admin. Rec. ("AR") 183–84, ECF

5    Nos. 10-1, 10-2.)   Plaintiff's claims were initially denied on June 8, 2018, and denied upon

6    reconsideration on July 27, 2018.  (AR 96–106, 111–16.)  On April 28, 2020, Plaintiff, represented

7    by non-attorney representative Nicholas Martinez,[3] appeared via telephonic conference, for an

8    administrative hearing before Administrative Law Judge Diane S. Davis (the "ALJ").  (AR 43–80.)

9    Vocational expert ("VE") Doris J. Shriver also testified at the hearing.  On June 3, 2020, the ALJ

10   issued a decision denying benefits.  (AR 26–42.)  On September 21, 2020, the Appeals Council

11   denied Plaintiff's request for review, making the ALJ's decision the final decision of the

12   Commissioner.  (AR 13–18.)  Plaintiff requested, and was granted, three extensions of time to file

13   a civil action.  (AR 1–12.)

14          Plaintiff initiated the instant action in federal court on August 16, 2021, and seeks judicial

15   review of the denial of his applications for benefits.  (ECF No. 1.)  The Commissioner lodged the

16   administrative record on March 31, 2022.  (ECF No. 10.)  On July 15, 2022, Plaintiff filed a motion

17   for summary judgment.  (ECF No. 14.)  On October 31, 2022, Defendant filed a brief in opposition.

18   (ECF No. 20.)  Plaintiff filed a reply to Defendant's briefing on November 15, 2022 (ECF No. 21),

19   and the matter is deemed submitted.

20

**III.**

21

**LEGAL STANDARD**

22      **A.      The Disability Standard**

23          To qualify for disability insurance benefits under the Social Security Act, a claimant must

24

25   [1] For ease of reference, the Court will refer to the administrative record by the pagination provided by the Commissioner and as referred to by the parties, and not the ECF pagination.  However, the Court will refer to the parties' briefings by their ECF pagination.

26

27   [2] In his benefits application, Plaintiff alleges an onset date of March 2, 2017.  (AR 83.)  At the administrative hearing, however, Plaintiff amended his onset date to January 18, 2019.  (AR 29, 51.)

28   [3] Plaintiff was represented by attorney Rosemary Abarca and non-attorney associate Mr. Martinez at the administrative level.  Plaintiff is currently represented by attorney Jonathan Pena.  (See AR 29, 176–79; ECF No. 14.)

show he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[4] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five-step sequential evaluation process to be used in determining if a claimant is disabled. 20 C.F.R. § 404.1520;[5] Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Comm'r of Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006). The burden of proof is on the claimant at steps one through four. Ford v. Saul, 950 F.3d 1141, 1148 (9th Cir. 2020). A claimant establishes a *prima facie* case of qualifying disability once he has carried the burden of proof from step one through step four.

Before making the step four determination, the ALJ first must determine the claimant's

---

[4] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3).

[5] The regulations which apply to disability insurance benefits, 20 C.F.R. §§ 404.1501 et seq., and the regulations which apply to SSI benefits, 20 C.F.R. §§ 416.901 et seq., are generally the same for both types of benefits. Accordingly, while Plaintiff seeks only disability benefits in this case, to the extent cases cited herein may reference one or both sets of regulations, the Court notes the cases and regulations cited herein are applicable to the instant matter.

RFC.   20 C.F.R. § 416.920(e); <u>Nowden v. Berryhill</u>, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018).   The RFC is "the most [one] can still do despite [his] limitations" and represents an assessment "based on all the relevant evidence."   20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1).   The RFC must consider all of the claimant's impairments, including those that are not severe.   20 C.F.R. §§ 416.920(e); 416.945(a)(2); Social Security Ruling ("SSR") 96-8p, <u>available at</u> 1996 WL 374184 (Jul. 2, 1996).[6]   A determination of RFC is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner.   <u>See</u> 20 C.F.R. §§ 404.1527(d)(2) (RFC is not a medical opinion); 404.1546(c) (identifying the ALJ as responsible for determining RFC).   "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity."   <u>Vertigan v. Halter</u>, 260 F.3d 1044, 1049 (9th Cir. 2001).

At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform given his RFC, age, education, and work experience.   20 C.F.R. § 416.912(g); <u>Lounsburry v. Barnhart</u>, 468 F.3d 1111, 1114 (9th Cir. 2006).   To do this, the ALJ can use either the Medical Vocational Guidelines ("grids"), or call a VE.   <u>See</u> 20 C.F.R. § 404 Subpt. P, App. 2; <u>Lounsburry</u>, 468 F.3d at 1114; <u>Osenbrock v. Apfel</u>, 240 F.3d 1157, 1162 (9th Cir. 2001).   "Throughout the five-step evaluation, the ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.' " <u>Ford</u>, 950 F.3d at 1149 (quoting <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039 (9th Cir. 1995)).

### B.   Standard of Review

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits.   42 U.S.C. § 405(g).   In determining whether to reverse an ALJ's decision, the Court reviews only those issues raised by the party challenging the decision.   <u>See</u> <u>Lewis v. Apfel</u>, 236 F.3d 503, 517 n.13 (9th Cir. 2001).

---

[6] SSRs are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner.   20 C.F.R. § 402.35(b)(1).   While SSRs do not have the force of law, the Court gives the rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations."   <u>Han v. Bowen</u>, 882 F.2d 1453, 1457 (9th Cir. 1989); <u>see also</u> <u>Avenetti v. Barnhart</u>, 456 F.3d 1122, 1124 (9th Cir. 2006).

Further, the Court's review of the Commissioner's decision is a limited one; the Court must find the Commissioner's decision conclusive if it is supported by substantial evidence.  42 U.S.C. § 405(g); Biestek v. Berryhill, 139 S. Ct. 1148, 1153 (2019).  "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Thomas v. Barnhart (Thomas), 278 F.3d 947, 954 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)); see also Dickinson v. Zurko, 527 U.S. 150, 153 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).  "[T]he threshold for such evidentiary sufficiency is not high." Biestek, 139 S. Ct. at 1154.  Rather, "[s]ubstantial evidence means more than a scintilla, but less than a preponderance; it is an extremely deferential standard." Thomas v. CalPortland Co. (CalPortland), 993 F.3d 1204, 1208 (9th Cir. 2021) (internal quotations and citations omitted); see also Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).  Even if the ALJ has erred, the Court may not reverse the ALJ's decision where the error is harmless.  Stout, 454 F.3d at 1055–56. Moreover, the burden of showing that an error is not harmless "normally falls upon the party attacking the agency's determination." Shinseki v. Sanders, 556 U.S. 396, 409 (2009).

Finally, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill v. Astrue, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)). Nor may the Court affirm the ALJ on a ground upon which she did not rely; rather, the Court may review only the reasons stated by the ALJ in her decision.  Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003).  Nonetheless, it is not this Court's function to second guess the ALJ's conclusions and substitute the Court's judgment for the ALJ's; rather, if the evidence "is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." Ford, 950 F.3d at 1154 (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)).

///

///

///

**IV.**

**THE ALJ'S FINDINGS OF FACT AND CONCLUSIONS OF LAW**

The ALJ conducted the five-step disability analysis and made the following findings of fact and conclusions of law as of the date of the decision, June 3, 2020 (AR 31–38):

At step one, the ALJ determined Plaintiff meets the insured status requirements of the Social Security Act through September 30, 2023, and Plaintiff has not engaged in substantial gainful activity since January 18, 2019, the alleged onset date.  (AR 32 (citing 20 C.F.R. §§ 404.1571 et seq.).)

At step two, the ALJ determined Plaintiff has the following severe impairment: rheumatoid arthritis.  (Id. (citing 20 C.F.R. § 404.1520(c)).)  The ALJ also determined Plaintiff's documented conditions of benign prostatic hyperplasia (BPH) and psoriasis, which cause no symptoms when treated with medications, are non-severe.  The ALJ also determined Plaintiff's obesity was non-severe.

At step three, the ALJ determined Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (AR 32–33 (citing 20 C.F.R. §§ 404.1520(d); 404.1525; 404.1526).)

Before proceeding to step four, the ALJ determined Plaintiff has the RFC to perform:

> light work, as defined in 20 CFR 404.1567(b), meaning the claimant can lift and/or carry twenty pounds occasionally and ten pounds frequently.  The claimant can sit, stand, and walk each for six hours out of an eight-hour workday. The claimant can occasionally stoop, kneel, crouch, crawl, and climb ladders, ropes, and scaffolds.  The claimant can frequently balance and climb ramps and stairs.   The claimant can frequently handle and finger with the bilateral upper extremities.  The claimant can occasional[ly] be exposed to extreme cold.

(AR 33–36 (citing 20 C.F.R. §§ 404.1529; 404.1520c; SSR 16-3p, available at 2017 WL 5180304 (Oct. 25, 2017)) (emphasis in original).)

At step four, the ALJ found Plaintiff is capable of performing his past relevant work as a quality control manager, as this position does not require the performance of work-related activities precluded by Plaintiff's RFC.  (AR 36 (citing 20 C.F.R. §§ 404.1565; 404.1569; 404.1569(a)).)

Alternatively, the ALJ performed a step five inquiry, in which the ALJ noted Plaintiff was born on January 19, 1969, and was 50 years old (which is defined as an individual closely approaching advanced age) on the alleged disability onset date; Plaintiff has a limited education and is able to communicate in English; and transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that Plaintiff is "not disabled," whether or not Plaintiff has transferrable job skills.  (AR 37 (citing 20 C.F.R. §§ 404.1563; 404.1564; SSR 82-41, available at 1982 WL 31389 (Jan. 1, 1982); 20 C.F.R. Part 404, Subpart P, Appendix 2).)   Considering Plaintiff's age, education, work experience, and RFC, the ALJ determined there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as:

- Furniture rental consultant (Dictionary of Occupational Titles ("DOT") 295.357-018), a light, unskilled work position with a specific vocational preparation ("SVP") level of 2, and approximately 109,000 jobs available in the national economy;

- Investigator-dealer accounts (DOT 241.367-038), a light, unskilled work position with an SVP level of 2, and approximately 56,000 jobs available in the national economy; and

- housekeeping (DOT 323.687-014), a light, unskilled work position with an SVP level of 2, and approximately 476,000 jobs available in the national economy.

(AR 37–38 (citing 20 C.F.R. §§ 404.1569; 404.1569(a); 20 C.F.R. Part 404, Subpart P, Appendix 2; SSR 83-11, available at 1983 WL 31252 (Jan. 1, 1983); SSR 83-12, available at 1983 WL 31253 (Jan. 1, 1983); SSR 83-14, available at 1983 WL 31254 (Jan. 1, 1983); SSR 85-15, available at 1985 WL 56857 (Jan. 1, 1985)).)   With respect to the identified jobs, the ALJ noted the VE's testimony was consistent with the DOT and, with respect to the specified RFC limitations, the VE's testimony was based on her professional experience.  (AR 38.)

Therefore, the ALJ found Plaintiff has not been under a disability, as defined in the Social Security Act, from January 18, 2019 (alleged date of onset) through June 3, 2020 (date of decision).  (Id. (citing 20 C.F.R. § 404.1520(f)).)

///

///

1

2

**V.**

**DISCUSSION**

Plaintiff asserts two challenges on appeal: (1) the ALJ erred in the evaluation of the medical opinions of Drs. Quinlan and Arnold; and (2) the ALJ failed to offer clear and convincing reasons for rejecting Plaintiff's subjective complaints.  (ECF No. 14 at 8–15.)

**A.      Evaluation of Medical Opinion Evidence**

Plaintiff argues the ALJ erred in finding Drs. Quinlan and Arnold's opinions to be "not persuasive" because she did not support this evaluation with substantial evidence.  (Id. at 8–13.) The Court disagrees.

1.    Legal Standard

Where, as here, a claim is filed after March 27, 2017, the revised Social Security Administration regulations apply to the ALJ's consideration of the medical evidence.   See Revisions to Rules Regarding the Evaluation of Medical Evidence (Revisions), 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5844 (Jan. 18, 2017); 20 C.F.R. § 404.1520c.  Under the updated regulations, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources."  20 C.F.R. §§ 404.1520c(a); 416.920c(a).  Thus, the new regulations require an ALJ to apply the same factors to all medical sources when considering medical opinions, and no longer mandate particularized procedures that the ALJ must follow in considering opinions from treating sources.  See 20 C.F.R. § 404.1520c(b) (the ALJ "is not required to articulate how [he] considered each medical opinion or prior administrative medical finding from one medical source individually."); Trevizo v. Berryhill, 871 F.3d 664, 675 (9th Cir. 2017).  As recently acknowledged by the Ninth Circuit, this means the 2017 revised Social Security regulations abrogate prior precedents requiring an ALJ to provide "specific and legitimate reasons supported by substantial evidence in the record" for rejecting the opinion of a treating physician. Woods v. Kijakazi (Woods II), 32 F.4th 785, 788–92 (9th Cir. 2022).

Instead, "[w]hen a medical source provides one or more medical opinions or prior administrative medical findings, [the ALJ] will consider those medical opinions or prior

administrative medical findings from that medical source together using" the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; [and] (5) other factors that "tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. §§ 404.1520c(a), (c)(1)–(5). The most important factors to be applied in evaluating the persuasiveness of medical opinions and prior administrative medical findings are supportability and consistency. 20 C.F.R. §§ 404.1520c(a), (b)(2). Regarding the supportability factor, the regulation provides that the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s), the more persuasive the medical opinions … will be." 20 C.F.R. § 404.1520c(c)(1). Regarding the consistency factor, the "more consistent a medical opinion(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) … will be." 20 C.F.R. § 404.1520c(c)(2).

Accordingly, the ALJ must explain in her decision how persuasive she finds a medical opinion and/or a prior administrative medical finding based on these two factors. 20 C.F.R. § 404.1520c(b)(2). The ALJ "may, but [is] not required to, explain how [she] considered the [other remaining factors]," except when deciding among differing yet equally persuasive opinions or findings on the same issue. 20 C.F.R. §§ 404.1520c(b)(2)–(3). Further, the ALJ is "not required to articulate how [she] considered evidence from nonmedical sources." 20 C.F.R. § 404.1520c(d). Nonetheless, even under the new regulatory framework, the Court still must determine whether the ALJ adequately explained how she considered the supportability and consistency factors relative to medical opinions and whether the reasons were free from legal error and supported by substantial evidence. See Martinez V. v. Saul, No. CV 20-5675-KS, 2021 WL 1947238, at *3 (C.D. Cal. May 14, 2021).

### 2. Medical Opinion Evidence

The only medical opinion evidence of record are the opinions of State agency consultants James Quinlan, M.D., and Leslie E. Arnold, M.D. (AR 87–94, 97–106.) The record does not contain any medical opinion from any other medical source.

At the initial level, Dr. Quinlan reviewed Plaintiff's medical records through March 22,

2018.  (AR 87–94.)  Dr. Quinlan determined Plaintiff's rheumatoid arthritis impairs his ability to grab with hands (which relates to his ability to climb ladders) and knees (which affects his ability to crouch).  He opined Plaintiff can occasionally lift/carry ten pounds; frequently lift/carry less than ten pounds; stand/walk four hours in an eight-hour workday; sit about six hours in an eight-hour workday; occasionally climb ramps/stairs; never climb ladders/ropes/scaffolds; and occasionally balance, stoop, kneel, crouch, and crawl.[7]  Dr. Quinlan opined Plaintiff has handling and fingering limitations; has no push/pull, reaching, or feeling limitations; and should avoid extreme cold, heat, humidity, and hazards.  As a result, Dr. Quinlan opined Plaintiff is capable of performing his past work a manufacturing consultant, as actually performed, and is therefore not disabled.

On reconsideration, Dr. Arnold reviewed Plaintiff's medical records through July 18, 2018.  (AR 97–106.)  Dr. Arnold largely affirmed Dr. Quinlan's determination, with the following differences in findings: Plaintiff can only occasionally push/pull due to arthritis symptoms in his wrists and fingers; he can frequently (rather than occasionally) climb ramps/stairs, and balance; occasionally (rather than never) climb ladders/ropes/scaffolds; and should avoid exposure to vibrations, but does not need to avoid exposure to heat or humidity.  Dr. Arnold also opined Plaintiff is capable of performing his past relevant work as a manufacturing manager, as actually performed, and is therefore not disabled.

### 3.    The ALJ's Evaluation of the Medical Opinion Evidence

The ALJ found the opinions of Drs. Quinlan and Arnold somewhat persuasive

> but the finding that the claimant is limited to only lifting and/or carrying 10 pounds is inconsistent with and unsupported by the medical evidence of record, as is the finding that he can only stand and/or walk for up to 4 hours in an 8-hour workday. The claimant's

---

[7] The Court notes that a limitation to occasionally–frequently lifting/carrying ten pounds is consistent with sedentary to light work. 20 C.F.R. § 404.1567. More specifically, "sedentary work" is defined as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met"; whereas "light work" is defined as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." Id.

1

2

3

4

5

6

7

8

9

10

11

12

> medical evidence does show painful range of motion in his hands and wrists indicating the claimant would need some work limitations; but these same records also showed normal grip strength supporting limitations, such as those adopted in this case and not those opined by Drs. Quinlan and Arnold (Exhibits 2F/14; 3F/3; 4F/2; 6F/4, 11, 13). The claimant's medical records showed bilateral swelling of the hands and wrists indicating the claimant would need limitations but his normal musculoskeletal examination and report of pain being only a two out of eight are consistent with the limitations directed by the undersigned and not those opined by the Doctors (Exhibits 1F/9; 3F/3; 4F/1-2). Moreover, since the loss of his job, he was able to travel, initially to Ohio, to give a presentation, and then in the summer of 2018 to China, on two, separate occasions for work.  He was able to travel on these occasions, by himself, including a month-long trip to China on the second trip, where both trips would have involved long flights, and that second trip a need to carry luggage for an extended stay. His most recent statement to his provider that he is working long hours and has muscular pain from working so hard suggests he is engaged in some prolonged physical activity. All of this results in a finding that he can do work at the light level, but with concordant postural, manipulative, and workplace environmental limitations, as noted.

13

(AR 35–36.)

14

>    4.    <u>Analysis</u>

15

The Court finds the ALJ adequately explained how she considered the supportability and

16

consistency factors relative to the medical opinions of Drs. Quinlan and Arnold, and her analysis

17

is supported by substantial evidence in the record.  <u>Ford</u>, 950 F.3d at 1154; <u>Martinez V.</u>, 2021 WL

18

1947238, at *3.  As noted above, the ALJ found the opinions' findings related to the lift/carry and

19

walking/standing limitations were unsupported by and inconsistent with the record showing

20

Plaintiff had normal grip strength, a reported pain level of 2/8, was capable of traveling by himself,

21

and reported to his provider that he experienced pain from "working so hard."  The medical records

22

identified by the ALJ in support of her findings constitute substantial evidence.  <u>Tommasetti v.</u>

23

<u>Astrue</u>, 533 F.3d 1035, 1041 (9th Cir. 2008); <u>Ford</u>, 950 F.3d at 1155; <u>Andrews</u>, 53 F.3d at 1041;

24

<u>Batson</u>, 359 F.3d at 1195.

25

In disputing the ALJ's decision, Plaintiff advances a number of arguments, all of which the

26

Court finds unpersuasive.  First, Plaintiff argues the ALJ improperly substituted her own opinion

27

for that of the medical professionals.  (ECF No. 14 at 8, 9.)  However, as previously noted, the RFC

28

is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner.  <u>See</u>

20 C.F.R. §§ 404.1527(d)(2); 404.1546(c); <u>Vertigan</u>, 260 F.3d at 1049 ("It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity.") (citing 20 C.F.R. § 404.1545).  It is therefore squarely within the ALJ's province to synthesize the medical evidence, resolve conflicts and ambiguities in the medical testimony, and determine credibility.  <u>See</u> <u>Andrews</u>, 53 F.3d at 1039; <u>Batson</u>, 359 F.3d at 1195; <u>see also</u> <u>Lingenfelter v. Astrue</u>, 504 F.3d 1028, 1042 (9th Cir. 2007) ("When evaluating the medical opinions of treating and examining physicians, the ALJ has discretion to weigh the value of each of the various reports, to resolve conflicts in the reports, and to determine which reports to credit and which to reject."); <u>Morgan v. Comm'r of Soc. Sec. Admin.</u>, 169 F.3d 595, 603 (9th Cir. 1999) (holding ALJ was "responsible for resolving conflicts" and "internal inconsistencies" within doctor's reports); <u>Tommasetti</u>, 533 F.3d at 1041–42 ("[T]he ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence."); <u>Benton</u>, 331 F.3d at 1040 (where "the record contains conflicting medical evidence, the ALJ is charged with determining credibility and resolving the conflict.").  Consequently, "[t]he ALJ's RFC determination need not precisely reflect any particular medical provider's assessment."  <u>Althoff-Gromer v. Comm'r of Soc. Sec.</u>, No. 2:18-cv-00082-KJN, 2019 WL 1316710, at *13 (E.D. Cal. Mar. 22, 2019); <u>Turner v. Comm'r of Soc. Sec.</u>, 613 F.3d 1217, 1222–23 (9th Cir. 2010); <u>Chavez v. Colvin</u>, 654 Fed. App'x 374, 375 (10th Cir. 2016) (ALJ need not "parrot … exact descriptions of … limitations" to reach an RFC determination consistent with the medical record and claimant's limitations).

Plaintiff also argues the ALJ failed to consider his reports of pain in the medical records. (ECF No. 14 at 8, 10–11.)  This is belied by a plain reading of the ALJ's decision, in which the ALJ expressly noted Plaintiff's complaints of painful range of motion in his hands and wrists, as well as the medical records showing bilateral swelling of the hands and wrists, and determined that certain postural, manipulative, and workplace environmental limitations were required.  In fact, such limitations were included in the RFC determination.  (<u>See</u> AR 33.)  To the extent Plaintiff disagrees with the ALJ's interpretation of the medical evidence and seeks to undermine the ALJ's finding by suggesting an alternative interpretation of the evidence, this is not sufficient to establish reversible error.  <u>See</u> <u>Ford</u>, 950 F.3d at 1154; <u>Burch</u>, 400 F.3d at 679 (citations omitted).

Similarly, Plaintiff argues the ALJ failed to explain why a normal grip strength should cancel out the findings of painful range of motion and swelling, "which formed the basis of Dr. Quinlan and Dr. Arnold's opinions." (ECF No. 14 at 10.)  This argument seems to somewhat miss the mark.  It does not appear to this Court that the ALJ seeks to "cancel out" any findings of painful range of motion and swelling; to the contrary, as previously noted, the ALJ acknowledged Plaintiff's complaints regarding this symptom, and expressly included limitations in the RFC determination to address it.  Meanwhile, the ALJ's findings relating to Plaintiff's normal grip strength appear to pertain to a different finding in the medical opinions.  More specifically, the Court notes Dr. Quinlan bases his opinion on findings of both "impaired use of hands" and "impair[ed] grabbing with hands…"  (See AR 91, 92.)  Thus, it appears the ALJ's findings relating to Plaintiff's grip strength directly address Dr. Quinlan's finding that Plaintiff's rheumatoid arthritis "impairs grabbing."

Plaintiff's argument that the ALJ improperly speculated that his travel to China "would have involved long flights," and "a need to carry luggage for an extended stay" (ECF No. 14 at 8, 10–11), is also unavailing.  Plaintiff reported taking a month-long trip by himself to China.  The ALJ's inferences that travel from California to China would require a "long flight," and that a month-long trip would require Plaintiff to take a suitcase with him, which he would, at times, need to carry (or lift/roll/push/pull) are reasonable inferences that may sufficiently be drawn from the record; the ALJ is permitted to make such inferences.  Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012), superseded by regulation on other grounds.  Furthermore, the Ninth Circuit has held that, where the ALJ has made such reasonable inferences, the district court is not to second-guess those determinations.  Tommasetti, 533 F.3d at 1038 ("The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record.").

Relatedly, Plaintiff appears to dispute the ALJ's consideration of his ability to travel, arguing that the ALJ should have elicited testimony from Plaintiff as to whether he had difficulty with travelling or the physical demands he experienced in transit.  (ECF No. 14 at 11.)  Not so.  Ninth Circuit caselaw indicates an ALJ's duty to further develop the record "is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the

1    evidence,"[8] and neither circumstance applies here.   Furthermore, Plaintiff's argument

2    impermissibly attempts to shift the burden of proof to the ALJ; whereas, it is the claimant's burden,

3    not the ALJ's, to establish disability by presenting all supporting evidence.  Smolen, 80 F.3d at

4    1288; Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007); Ford, 950 F.3d at 1148.[9]

5          Finally, the Court addresses Plaintiff's argument that the ALJ mischaracterized the record

6    in reaching her RFC determination, such as by relying on a medical note in which Plaintiff reported

7    his pain was at a level 2.  (ECF No. 14 at 8, 10–11; see also AR 360)  Plaintiff appears to suggest

8    the ALJ cherry-picked the record by taking a single report of low pain level out of context from the

9    longitudinal record.  To this point, the Court notes the Ninth Circuit does not require an ALJ to

10   "perform a line-by-line exegesis of the claimant's testimony" or "draft dissertations when denying

11   benefits," Lambert v. Saul, 980 F.3d 1266, 1277 (9th Cir. 2020); thus, the ALJ need not cite to

12   every medical note in the record that supports her finding.  See also Molina, 674 F.3d at 1121

13   ("Even when an agency explains its decision with less than ideal clarity, we must uphold it if the

14   agency's path may reasonably be discerned.").   Nonetheless, the Court finds the ALJ fairly

15   summarized the longitudinal records, as her finding that Plaintiff sometimes reported low pain

16   levels is also supported by other medical notes in the record.  (See, e.g., AR 388, 397 (reporting

17   pain as 1–2 in October 2018 and October 2019).)

18        On this record, the Court finds the ALJ reasonably interpreted the objective medical

19   evidence and substantial evidence supports the ALJ's relevant findings.  As previously noted, this

20   Court must defer to the decision of the ALJ where evidence exists to support more than one rational

21   interpretation.  Drouin v. Sullivan, 966 F.2d 1255, 1258 (9th Cir. 1992); see also Verduzco v.

22   Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999) (When the evidence presented could support either

23   affirming or reversing the Commissioner's conclusions, the court cannot substitute its own

---

[8] See Mayes v. Massanari, 276 F.3d 453, 459–60 (9th Cir. 2001); Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005) (citing 20 C.F.R. §§ 404.1512(e), 416.912(e)); see also Brown v. Berryhill, 697 Fed. App'x 548, 549 (9th Cir. 2017) ("Because the record evidence was not ambiguous and the record was sufficient to allow for proper evaluation of the evidence, the ALJ was not required to re-contact Brown's doctors or further develop the record … [and] the ALJ provided specific, clear and convincing reasons for finding Brown's testimony regarding his symptom severity was not fully credible, including that Brown's testimony was inconsistent with his daily activities.").

[9] Plaintiff asserts additional arguments about the ALJ's discussion of his work and travels, which appear to be more properly addressed in the next section, regarding the ALJ's consideration of Plaintiff's activities in support of her adverse credibility determination and rejection of Plaintiff's subjective testimony.  (See ECF No. 14 at 11.)

judgment for that of the Commissioner).  "As [the Court] cannot say that the ALJ's interpretation of the available evidence was not rational, the ALJ's conclusions were supported by substantial evidence."  Shaibi v. Berryhill, 883 F.3d 1102, 1108 (9th Cir. 2017).  Accordingly, the Court concludes the ALJ's analysis of the supportability and consistency factors relative to Drs. Quinlan and Arnold's medical opinions was appropriately considered and is based on substantial evidence from the record.  See Woods II, 32 F.4th at 792; Martinez V., 2021 WL 1947238, at *3; see also Ford, 950 F.3d at 1155; Tommasetti, 533 F.3d at 1041; Bayliss, 427 F.3d at 1216; Batson, 359 F.3d at 1195; Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009).

### B.   Evaluation of Plaintiff's Subjective Complaints

Plaintiff argues the ALJ failed to offer clear and convincing reasons for rejecting his subjective complaints and, consequently, failed to include the alleged work-related limitations in the RFC determination.  (ECF No. 14 at 8, 13–15.)

### 1.   Legal Standard[10]

The ALJ is responsible for determining credibility,[11] resolving conflicts in medical testimony, and resolving ambiguities.  Andrews, 53 F.3d at 1039.  A claimant's statements of pain or other symptoms are not conclusive evidence of a physical or mental impairment or disability. 42 U.S.C. § 423(d)(5)(A); SSR 16-3p; see also Orn, 495 F.3d at 635 ("An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment.").

Rather, an ALJ performs a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.  See Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014); Smolen, 80 F.3d at 1281; SSR 16-3p, at *3.  First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged.  Garrison, 759 F.3d at 1014; Smolen, 80 F.3d at 1281–82.

---

[10] Although Defendant emphasizes disagreement with the "clear and convincing reasons" standard in order to preserve the issue for future appeals, Defendant acknowledges it is the applicable standard for weighing credibility in the Ninth Circuit.  (ECF No. 20 at 11 n.3.)

[11] SSR 16-3p applies to disability applications heard by the agency on or after March 28, 2016. Ruling 16-3p eliminated the use of the term "credibility" to emphasize that subjective symptom evaluation is not "an examination of an individual's character" but an endeavor to "determine how symptoms limit ability to perform work-related activities." SSR 16-3p, at *1-2.

If the claimant satisfies the first step and there is no evidence of malingering, "the ALJ may reject the claimant's testimony about the severity of those symptoms only by providing specific, clear, and convincing reasons for doing so." Lambert, 980 F.3d at 1277 (citations omitted).

> If an ALJ finds that a claimant's testimony relating to the intensity of his pain and other limitations is unreliable, the ALJ must make a credibility determination citing the reasons why the testimony is unpersuasive. The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints. In this regard, questions of credibility and resolutions of conflicts in the testimony are functions solely of the Secretary.

Valentine v. Astrue, 574 F.3d 685, 693 (9th Cir. 2009) (quotation omitted); see also Lambert, 980 F.3d at 1277.

Subjective pain testimony "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence." See Vertigan, 260 F.3d at 1049 ("The fact that a claimant's testimony is not fully corroborated by the objective medical findings, in and of itself, is not a clear and convincing reason for rejecting it."); see also 20 C.F.R. § 404.1529(c)(2) ("[W]e will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements."). Rather, where a claimant's symptom testimony is not fully substantiated by the objective medical record, the ALJ must provide an additional reason for discounting the testimony. See Burch, 400 F.3d at 680–81; see also Stobie v. Berryhill, 690 Fed. App'x 910, 911 (9th Cir. 2017) (finding ALJ gave two specific and legitimate clear and convincing reasons for rejecting symptom testimony: (1) insufficient objective medical evidence to establish disability during the insured period; and (2) symptom testimony conflicted with the objective medical evidence).

Nevertheless, the medical evidence "is still a relevant factor in determining the severity of [the] claimant's pain and its disabling effects." Burch, 400 F.3d at 680–81; Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001); SSR 16-3p (citing 20 C.F.R. § 404.1529(c)(2)). Indeed, Ninth Circuit caselaw has distinguished testimony that is "uncorroborated" by the medical evidence from testimony that is "contradicted" by the medical records, deeming the latter sufficient on its own to meet the clear and convincing standard. See Hairston v. Saul, 827 Fed. App'x 772, 773 (9th Cir.

2020) (quoting Carmickle v. Comm'r of Soc. Sec. Admin., 533 F.3d 1155, 1160 (9th Cir. 2008) (affirming ALJ's determination claimant's testimony was "not entirely credible" based on contradictions with medical opinion)) ("[c]ontradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."); see also Woods v. Comm'r of Soc. Sec. (Woods I), No. 1:20-cv-01110-SAB, 2022 WL 1524772, at *10 n.4 (E.D. Cal. May 13, 2022) ("While a *lack* of objective medical evidence may not be the sole basis for rejection of symptom testimony, inconsistency with the medical evidence or medical opinions can be  sufficient." (emphasis in original)).

Additional factors an ALJ may consider include the location, duration, and frequency of the pain or symptoms; factors that cause or aggravate the symptoms; the type, dosage, effectiveness or side effects of any medication; other measures or treatment used for relief; conflicts between the claimant's testimony and the claimant's conduct—such as daily activities, work record, or an unexplained failure to pursue or follow treatment—as well as ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, internal contradictions in the claimant's statements and testimony, and other testimony by the claimant that appears less than candid.  See Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014); Tommasetti, 533 F.3d at 1039; Lingenfelter, 504 F.3d at 1040; Smolen, 80 F.3d at 1284.  Thus, the ALJ must examine the record as a whole, including objective medical evidence; the claimant's representations of the intensity, persistence and limiting effects of her symptoms; statements and other information from medical providers and other third parties; and any other relevant evidence included in the claimant's administrative record.  SSR 16-3p, at *5.

Finally, so long as substantial evidence supports the ALJ's assessment of a claimant's subjective complaint, the Court "will not engage in second-guessing."  Thomas, 278 F.3d at 959.

### 2.   Plaintiff's Testimony

Here, Plaintiff alleges disability based on severe hereditary rheumatoid arthritis, bladder condition, and stress due to unemployment and physical pain.  (AR 216.)  Plaintiff alleges he stopped working on March 2, 2017, due to his condition; this was also the original alleged date of onset.  (AR 204.)  Plaintiff reports that when his pain flares up, he is unable to use that part of his

body until the pain stops.  (AR 222.)  Plaintiff reported that he sleeps five hours, plus takes naps for a couple hours during the day.  (AR 63–64, 224.)  He does not walk far.  (AR 222.)  Plaintiff also reported that he sometimes has difficulty finishing housework and other chores.  (AR 224.)  However, unless his joints swell or he has pain, Plaintiff reported that he helps his wife around the house; he takes short trips to the grocery store a couple times per week; he picks up after himself; and he does not require an assistive mobility device.  (AR 222–24.)  Plaintiff reported he can climb two flights of stairs; carry things around the house; and drive short distances without "cramping up."  (AR 223.)

At the April 28, 2020 hearing, Plaintiff amended his onset date from March 2, 2017, to January 18, 2019 (the day before his 50th birthday), "in order to … invoke the Grid 201.14."  (AR 51.)  Plaintiff testified that he went to China for a month in 2018 for a possible consulting job, but after the month ended, he was not hired for a permanent position.  (AR 65.)  With respect to the October 10, 2019 medical note, which states Plaintiff reported he was working long hours and was experiencing muscular pain from working so hard, Plaintiff testified "I don't know why they would say that … I didn't say anything about working."  (AR 71.)

Plaintiff testified that he experiences pain primarily in the legs, but also some pain in the elbows.  (AR 63.)  Plaintiff testified that he cannot sit for too long because he gets cramps in his legs.  (AR 61–62.)  Plaintiff testified he can stand for 30 minutes to an hour.  (AR 62.)  When his legs start throbbing, he has to put them up for 30 minutes.  (Id.)  Plaintiff testified he can walk approximately a block, or maybe 20–25 minutes.  (Id.)  He cannot sleep more than a couple hours because his limbs will go numb.  (AR 63.)  He has to change positions or his arms will go numb.  (Id.)  Because he cannot stay in one position, he tosses and turns in his sleep; then he is drowsy during the day.  (Id.)

Plaintiff testified he does some laser spray painting for fun with his wife about two to three hours per week.  (AR 66–67.)  Plaintiff testified he takes Orencia and Aleve for the pain, or sometimes over-the-counter Tylenol.  (AR 67–68.)  This medication prevents the pain from being "shooting."  (AR 62.)  Plaintiff testified that he hasn't had a major flare-up of his rheumatoid arthritis because of his medication, but still "get[s] cramping and … problems functioning" and

1    joint pain.  (AR 67.)

2          3.    Analysis

3          The ALJ did not find evidence of malingering; therefore, she was required to provide

4    specific, clear, and convincing reasons for rejecting Plaintiff's testimony.  Lambert, 980 F.3d at

5    1277.  The Court finds the ALJ has articulated such reasons here.

6          **a.    Inconsistencies with the Medical Record**

7          First, the ALJ identifies a number of inconsistencies between Plaintiff's testimony

8    regarding his symptoms and purported limitations, and the objective medical evidence:

9           Although the claimant testified to issues with walking, examination
             showed the claimant with a normal musculoskeletal examination and
10          normal musculoskeletal range of motion (Exhibits 1F/9, 14; 6F/4, 11,
             13).  Even though the claimant reported morning stiffness, the
11          claimant was observed with no swelling of joints or effusions at
             examination (Exhibits 1F/9; 6F/4, 11, 13).  Despite the claimant's
12          alleged trouble lifting things, examination indicated the claimant had
             normal grip strength bilaterally (Exhibit 6F/4, 11, 13).
13

14   (AR 34.)  Contradiction between the claimant's testimony and the relevant medical evidence is a

15   sufficient basis for an adverse credibility finding.  Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir.

16   1995) ("The ALJ … identified several contradictions between claimant's testimony and the relevant

17   medical evidence and cited several instances of contradictions within the claimant's own testimony.

18   We will not reverse credibility determinations of an ALJ based on contradictory or ambiguous

19   evidence."); Carmickle, 533 F.3d at 1160 (affirming ALJ's determination claimant's testimony was

20   "not entirely credible" based on contradictions with medical opinion); Hairston, 827 Fed. App'x at

21   773 (quoting Carmickle with approval) ("[c]ontradiction with the medical record is a sufficient

22   basis for rejecting the claimant's subjective testimony.").  Importantly, Plaintiff does not address

23   these specific conflicts in the record identified by the ALJ.  In failing to do so, Plaintiff waives his

24   argument regarding these findings on appeal.  Lewis, 236 F.3d at 517 n.13; Indep. Towers of Wash.

25   v. Wash., 350 F.3d 925, 929 (9th Cir. 2003) (stating court "will not consider any claims that were

26   not actually argued in appellant's opening brief" and will only "review … issues which are argued

27   specifically and distinctly in a party's opening brief.").

28          At most, Plaintiff maintains the ALJ did not provide a basis for discounting his pain

19

testimony, and that her determination was "vague" and unsupported.  (See ECF No. 14 at 14, 15.)
But these assertions, without more, are merely conclusory contentions.  Moreover, the Court finds
such contentions are directly belied by the ALJ's decision, quoted *supra*.  That is, the ALJ has
identified specific allegations of limitations and identified equally specific medical evidence which
contradicts each identified allegation.  Valentine, 574 F.3d at 693; Lambert, 980 F.3d at 1277.  The
multiple medical notes from the record constitute substantial evidence which supports the ALJ's
adverse credibility determination.  This alone is a sufficient reason to uphold the ALJ's discounting
of Plaintiff's symptom testimony.  Carmickle, 533 F.3d at 1160; Hairston, 827 Fed. App'x at 773.

      **b.**      **Prior Inconsistent Statements (Ordinary Techniques of Credibility Evaluation)**

      The ALJ also identified several prior inconsistent statements between Plaintiff's testimony
at the hearing, and his reports to medical providers.  For example, the ALJ noted, "[a]lthough the
claimant asserted constant pain, the claimant stated his pain was at a two out of ten at examination."
(AR 34 (citing AR 362).)  The ALJ also noted that, despite his overall claim of disability, "[m]edical
records noted the claimant was starting [a] new job that includes international travel."  (Id. (citing
AR 349–50).)  Similarly, the ALJ referenced an October 10, 2019 medical note, in which Plaintiff
reported he was working long hours and was experiencing muscular pain from working so hard;
this was contrasted with Plaintiff's allegation that he has not worked since March 2, 2017.  (AR
35.)

      These internal contradictions in Plaintiff's statements and testimony also constitute
substantial evidence sufficient to support the ALJ's adverse credibility determination.  See Light v.
Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997) (ALJ's finding that a claimant generally lacks
credibility is a permissible basis for rejecting claimant's testimony); see also Ghanim, 763 F.3d at
1163 (ALJ may employ ordinary techniques of credibility evaluation, such as prior inconsistent
statements concerning the symptoms, and other testimony by the claimant that appears less than
candid); Tommasetti, 533 F.3d at 1039 (finding claimant was a "vague witness" went to ordinary
techniques of credibility evaluation and supported the ALJ's credibility determination)).

      **c.**      **Conservative Treatment**

      Evidence that a claimant's medical treatment was relatively conservative may properly be

1   considered in evaluating a claimant's subjective complaints.  See id. at 1039–40; Parra, 481 F.3d

2   at 751 ("[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony

3   regarding severity of an impairment.") (citation omitted).  Here, the ALJ noted Plaintiff reported

4   that his symptoms are well-controlled with medication:

> Despite his allegations, treatment notes reflect that, [Plaintiff's]
> symptoms, including pain are well-controlled on medication.  There
> is no evidence of any significant worsening of his condition.  Even
> at the most recent record, from October 2019, he reported stopping
> all DMARDs and his symptoms are well controlled (Exhibit 6F/3).
> He has not reported the issues he has reported as part of his claim to
> his providers.

9   (AR 35; see also AR 34 (citing AR 388, 395).)  Medication is deemed to be a "conservative

10  treatment."  See Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006)

11  ("Impairments that can be controlled effectively with medication are not disabling for the purpose

12  of determining eligibility for SSI benefits," and thus constitute "conservative treatment."); see also

13  Tommasetti, 533 F.3d at 1039–40 (claimant's treatment, including physical therapy, the use of anti-

14  inflammatory medication, a transcutaneous electrical nerve stimulation unit, and a lumbosacral

15  corset, was deemed "conservative"); see also Woods II, 32 F. 4th at 794 (affirming ALJ's

16  discounting of subjective testimony based on "very conservative" treatment of mostly medication

17  alone and a knee injection).   Based on the foregoing authorities, the medical evidence

18  demonstrating Plaintiff's symptoms are controlled with medication constitutes substantial evidence

19  in support of the ALJ's adverse credibility determination.

20          Furthermore, Plaintiff does not dispute the ALJ's findings with respect to his conservative

21  treatment based on medications.  Again, he is therefore deemed to have waived argument on this

22  issue.  Lewis, 236 F.3d at 517 n.13; Indep. Towers of Wash., 350 F.3d at 929.

23          **d.      Activities of Daily Living (ADLs)**

24          The Ninth Circuit has held that "[e]ngaging in daily activities that are incompatible with the

25  severity of symptoms alleged can support an adverse credibility determination."  Ghanim, 763 F.3d

26  at 1165.

27          Here, in discounting Plaintiff's symptom testimony, the ALJ found Plaintiff "can perform

28  at higher levels than he states, or perceives he can."  (AR 35.)  More specifically, the ALJ noted:

the claimant is engaged in a fairly active lifestyle. He was able to plan and travel to China as a consultant, flying there on two, separate occasions in the summer of 2018, just prior to his amended, alleged onset date (Exhibit 3F/1, 4). At the hearing, he testified he traveled there on two, separate occasions; the first to give his presentation, and the second time for one month. Interestingly, he did not have any acute issues during his time there, or from sitting for prolonged periods on that long, international flight. He did not seek any medical attention during this period, citing any flare, and there is no documentation of any emergency room or urgent care visit. Additionally, although he has reported no ongoing work activity, at a[] regular follow up visit with his rheumatologist, PA Blankenship, in October 2019, he reported that he was working long hours and has muscular pain from working so hard (Exhibit 6F/3). All of this suggests he is more active than alleged.

(Id.; see also AR 34 (ALJ also notes Plaintiff "testified at the hearing that he does laser painting for two to three hours a week").) These specific references to the record showing Plaintiff's ability to engage in laser painting, engage in international travel, and continue to engage in work, among other activities, constitute a clear and convincing reason based on substantial evidence to support the ALJ's rejection of Plaintiff's symptom testimony. Molina, 674 F.3d at 1112–13; Valentine, 574 F.3d at 693.

Plaintiff advances a number of arguments against the ALJ's discussion of ADLs, none of which this Court finds persuasive. For example, Plaintiff argues that "the ability to travel one time is not a 'daily activity' " (ECF No. 14 at 11), and Plaintiff "should not be penalized for attempting to lead [a] normal [life] in the face of [his] limitations" (id. at 14) (citations and internal quotation marks omitted, and changes added). Notwithstanding the fact that the ALJ identified three instances of travel—once to Ohio in 2018, and twice to China (AR 36), the Court notes the Ninth Circuit has explained that, "[a]lthough a claimant should not be punished for trying to lead a normal life, if the level of activity is inconsistent with a claimant's alleged limitations, this has bearing on the claimant's credibility." Gardner v. Barnhart, 73 Fed. App'x 193, 196 (9th Cir. 2003); see also Tommasetti, 533 F.3d at 1040 (upholding ALJ's inference that claimant was not as physically limited as alleged, based on his ability to travel to Venezuela for an extended time to care for an ailing sister). Here, the ALJ found Plaintiff's multiple trips, including his month-long international trip to China, as well as reports that Plaintiff was working long hours, constituted activities that were inconsistent with Plaintiff's allegations of total disability. The Court cannot say that the ALJ's

1    interpretation of the available evidence was not rational, Shaibi, 883 F.3d at 1108; therefore, it will

2    not disturb the ALJ's finding here.

3         Plaintiff also takes issue with the ALJ's reference to the October 10, 2019 medical note (AR

4    388), in which it was recorded that Plaintiff complained of pain due to working long hours.  As to

5    this note, Plaintiff maintains—as he testified (see AR 71)—that he has not worked at all since 2018,

6    and he does not know why his medical record states he was working long hours.  (ECF No. 14 at

7    11.)  The Court finds this argument, too, is unavailing.  As the Court has noted, it is the ALJ who

8    must resolve conflicting and ambiguous evidence to determine credibility.  See Burch, 400 F.3d at

9    680–81 (the ALJ is the fact-finder, and is entitled to choose between competing interpretations of

10   the record).  The 2019 medical note and Plaintiff's 2020 testimony are in direct conflict.  Consistent

11   with SSR 16-3p, the ALJ reviewed the record as a whole to reach her credibility determination; of

12   particular relevance here, she noted Plaintiff's prior inconsistent statements and the evidence

13   regarding Plaintiff's travels to Ohio and China to seek fulltime employment, and accorded the 2019

14   medical note greater veracity than Plaintiff's subsequent testimony disavowing the report to his

15   medical provider.[12]  The ALJ thus identified substantial evidence in support of her assessment of

16   Plaintiff's testimony; accordingly, the Court "will not engage in second-guessing."  Thomas, 278

17   F.3d at 959.

18        Finally, the Court notes Plaintiff contends, again, that the ALJ  "cherry-picked" from the

19   record, this time by "fail[ing] to reconcile the conflicting evidence, and merely rely[ing] upon the

20   normal findings to support her conclusion while disregarding the abnormal signs."  (ECF No. 14 at

21   14.)  As to this point, the Court finds the Ninth Circuit's discussion in Gardner v. Barnhart is

22   particularly instructive.  In rejecting a similar argument presented by the claimant in that case, the

23   Ninth Circuit explained:

24            [The claimant] also asserts that the ALJ took medical reports out of
              context and relied on them as such in making his decisions.
25            The ALJ weighed all of the evidence he credited.  The medical
              evidence in this case is extensive and could be interpreted in various

26   ─────────────────────────

27   [12] Notably, Plaintiff later defends his China trip in his briefing by arguing he was merely "trying to find work that
     accommodated his limitations."  (See ECF No. 14 at 14.)  This argument, however, appears to lend further support to
     the ALJ's decision to accord greater weight to Plaintiff's 2019 medical note, as well as the ALJ's ultimate finding of
28   nondisability.

ways.  The ALJ interpreted it in a reasonable manner.  When the evidence presented could support either affirming or reversing the Commissioner's conclusions, this court cannot substitute its own judgment for that of the Commissioner.  Here, despite any allegation of evidence taken out of context, the ALJ's conclusions are supported by substantial evidence.  The ALJ supported his evaluation with articulated analysis of the evidence and citation to specific substantial evidence in the record.  He cited specific reports for his conclusions and gave sufficient legitimate reasons for rejecting others.  This is all that he is required to do.

Gardner, 73 Fed. App'x at 195 (internal citations omitted).  For the same reasons articulated by the Ninth Circuit, and in light of the Court's previous discussion regarding the substantial evidence which supports the ALJ's decision, the Court finds Plaintiff's argument to be unpersuasive here.

In sum, the ALJ has sufficiently identified multiple clear and convincing reasons based on substantial evidence in support of her adverse credibility finding.  Because Plaintiff does not address all of the ALJ's reasons for discounting her testimony, she has waived those arguments on appeal.  On this basis alone, the ALJ's credibility determination must be upheld.  Lewis, 236 F.3d at 517 n.13; Indep. Towers of Wash., 350 F.3d at 929; see also Ruiz v. Comm'r of Soc. Sec. Admin., 490 Fed. App'x. 907, 908–09 (9th Cir. 2012) (affirming ALJ's decision to deny benefits and concluding that, because the ALJ listed nine rationale for rejecting the claimant's testimony and the claimant challenged only one of the rationale, the ALJ's conclusion would still be supported by the unchallenged rationale).

### 4.   RFC Determination

Finally, Plaintiff argues that, because the ALJ improperly rejected his subjective complaints, the RFC does not account for Plaintiff's work-related limitations based on his symptom allegations.  (ECF No. 14 at 8, 13–15.)  Having found the ALJ's adverse credibility determination regarding Plaintiff's testimony was appropriately supported by substantial evidence, however, Plaintiff's derivative RFC argument fails.  See Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1175–76 (9th Cir. 2008) (rejecting a step five argument that "simply restates" arguments about medical evidence and testimony); Hairston, 827 Fed. App'x at 773 (summarily rejecting claimant's arguments that RFC and step-five findings were unsupported by substantial evidence as "derivative of her preceding arguments addressed and rejected above."); see also Embrey v. Bowen, 849 F.2d

24

418, 423 (9th Cir. 1988) (acknowledging there is no requirement that testimony for which the ALJ has provided specific and legitimate reasons to discount be included in the hypothetical given the VE); Copeland v. Bowen, 861 F.2d 536, 540–41 (9th Cir. 1988) (holding that hypothetical question need not include claimant's subjective impairments if the ALJ makes specific findings that claimant is not credible).[13]

## VI.

## CONCLUSION AND RECOMMENDATION

Based on the foregoing, IT IS HEREBY RECOMMENDED that:

1.     Plaintiff's appeal from the decision of the Commissioner of Social Security (ECF No. 14) be DENIED; and

2.     The Clerk of the Court be DIRECTED to enter judgment in favor of Defendant Commissioner of Social Security and against Plaintiff Michael B. Lewis and close this case.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within **fourteen (14) days** of issuance of this recommendation, Plaintiff may file written objections to the findings and recommendations with the Court.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **February 22, 2023**

_____
UNITED STATES MAGISTRATE JUDGE

---

[13] Having found the ALJ properly evaluated the medical opinion evidence and discounted Plaintiff's symptom testimony, and concluding the RFC determination is supported by substantial evidence, the Court does not reach the parties' alternative argument regarding whether any error was harmless (see ECF No. 14 at 11–12; ECF No. 20 at 9–10).